USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/23/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT CASTRO, on behalf of himself and other similarly situated employees of the defendant,

                Plaintiff,

-v-                          No. 04 Civ. 1445 (LTS)(THK)

METROPOLITAN TRANSPORTATION AUTHORITY,

                Defendant.

## OPINION AND ORDER

APPEARANCES:

LAW OFFICE OF DAVID M. LIRA
   By: David M. Lira, Esq.
595 Stewart Avenue, Suite 510
Garden City, NJ 11530

*Attorney for Plaintiff*

CATHERINE A. RINALDI, ESQ.
GENERAL COUNSEL FOR
METROPOLITAN TRANSPORTATION
AUTHORITY
   By: Ching Wah Chin, Esq.
347 Madison Avenue, 9th Floor
New York, NY 10017

*Attorney for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

In this action relating to claimed rights to overtime pay, Plaintiff alleges in his complaint that Defendant has committed violations of the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. § 201, et seq., violations of his constitutional rights under 42 U.S.C. § 1983, breach of contract, and unjust enrichment surrounding nonpayment of overtime work performed. The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 of the common law and equity claims.

Defendant moves for summary judgment to dismiss Plaintiff's complaint in its entirety. Plaintiff has withdrawn his 42 U.S.C. § 1983 and unjust enrichment claims,[1] and cross-moves for summary judgment on his FLSA and contract claims. Plaintiff has also abandoned any effort to prosecute this litigation as a collective action under section 216 of the FLSA.[2] For the following reasons, Defendant's motion is granted as to Plaintiff's FLSA claim, the Court declines to exercise supplemental jurisdiction of Plaintiff's breach of contract claim, and Plaintiff's cross-motion is denied in its entirety.

BACKGROUND

The following material facts are undisputed unless otherwise stated. On February 7, 2000, Defendant the Metropolitan Transportation Authority ("Defendant" or the "MTA") hired Plaintiff Robert Castro ("Plaintiff" or "Castro") for a civilian position of Manager, Fleet Services and Safety, in the MTA Police Department at an annual salary of $55,000, payable bi-weekly.

---

[1] See Pl.'s Mem. in Opp. to Sum. Judgment at 12.

[2] See Pl.'s Stmt. pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Pl.'s Rule 56.1") ¶ 1.

(See Def.'s Stmt. Pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Def's Rule 56.1") ¶ 3; Pl.'s Rule 56.1 ¶ 2.)[3] Plaintiff's duties included overseeing all facets of the administration, maintenance, and development of the MTA Police Department vehicles, including the supervision of at least two employees. (See Def.'s Rule 56.1 ¶¶ 13-14; Pl.'s Resp. ¶¶ 13-14.) Plaintiff was hired as an employee at will. (See Def.'s Rule 56.1 ¶ 4; Pl.'s Resp. ¶ 4.) In connection with his employment offer, Plaintiff received a January 11, 2000, letter from Defendant stating that the position was "an exempt managerial position." (Ching Wah Chin Decl., "Chin Decl." in support of Def.'s Mem. for Sum. Judgment, Ex. C.) There is a dispute as to the meaning of this phrase in relation to Plaintiff's status under FLSA.

The MTA issued a "Policy instruction," (the "Policy") dated September 1, 1989, with revisions dated May 14, 1990, on the topic of overtime and compensatory time. (See Pl.'s Rule 56.1 ¶ 12; Chin Decl., Ex. G at 1) The purpose of the document was "to codify Authority policy on the eligibility to earn overtime, and on the accrual, documentation, carryover, and use of compensatory time." (Chin Decl., Ex. G at 1.) The Policy instruction defines a "regular employee" as "[a]ny full-time employee hired by a Department Head to be paid at the end of each Qualifying Period, with provision of benefits and leave accruals."[4] (Id. at 1.) An "exempt employee" is "[a]ny Executive Employee, Administrative Employee, or Professional Employee, under the provisions of the Fair Labor Standards Act (FLSA)." (Id. at 2.) The Policy instruction

---

[3] References to the parties' S.D.N.Y. Local Rule 56.1 statements incorporate those statements' underlying evidentiary references.

[4] "Qualifying Period" is defined as "[e]ach two-week period beginning on the Thursday after payday and ending on the Wednesday of payday during which a Regular Employee works and/or uses paid leave for a total of at least seven Workdays." (Chin Decl., Ex. G at 2.)

indicates that "[c]ompensatory time may be earned by all exempt employees . . . on an hour for hour basis." (Id. at 3.) However, exempt employees only earn compensatory time on holidays or weekends and must work a minimum of 4 consecutive hours, up to a maximum of 7.5 hours on any workday. (Id. at 4.) Non-exempt employees, on the other hand, are eligible for overtime compensation for all hours worked in excess of 40 hours a week. (Id. at 3.) Further, an employee may not carry over more than 75 hours of compensatory time beyond his anniversary date without the written permission of Human Resources. (Id. at 4.) The Policy instruction also provides that, "[a]t the time of voluntary separation from the Authority, a regular employee will receive the cash value at his or her then current rate of pay for up to 75 hours of compensatory time." (Id. at 5.)

Pursuant to the terms of the Policy, the MTA considered Castro an exempt employee who was not eligible for overtime compensation for hours worked in excess of 40 hours per work-week. (See Pl.'s Rule 56.1 ¶¶ 25-26.) However, as a result of the September 11, 2001, attacks on the World Trade Center, the MTA instructed Castro, along with other civilian employees, to work additional hours and days in an effort to assist with the consequences of the attacks. (See id. ¶ 29.) The MTA promulgated a September 19, 2001, memorandum, which waived certain provisions of the Policy Instruction in connection with the additional hours worked. (See Chin Decl., Ex. L.) The memorandum waived, from September 11, 2001, the restrictions under section B(4) of the Policy which had provided that exempt employees could only earn compensatory time on the weekends and holidays and were required to work a minimum of 4 hours, up to a maximum of 7.5 hours, on each such time. (Id.) The parties disagree as to whether this waiver affected other provisions of the Policy instruction. Plaintiff

contends that, while the waiver was in effect, he accumulated 397 hours of compensatory time. (Compl. ¶ 41.) By memorandum dated May 22, 2002, the MTA terminated the temporary waiver of the compensatory time requirement for Castro and the other civilian employees. (See Pl.'s Rule 56.1 ¶ 50; David M. Lira Decl., "Lira Decl.," in support of Pl.'s Mem. in Opp. to Sum. Judgment, Ex. 5.)

On October 9, 2002, Plaintiff was promoted to Assistant Director, Fleet Services and Safety, and at the time of his termination had an annual salary of over $65,000. (See Pl.'s Rule 56.1 ¶ 2; Def's Rule 56.1 ¶ 6.) Plaintiff was terminated involuntary on January 30, 2003, for reasons that are not contested in this lawsuit. (See Pl.'s Rule 56.1 ¶¶ 3-5; Chin Decl., Ex. I.) At the time of his termination, the MTA refused to pay Plaintiff for the 397 hours of compensatory time. (See Pl.'s Rule 56.1 ¶ 37.) Plaintiff subsequently brought the instant action to recover payment for that compensatory time.

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The

Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original)). "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

*Plaintiff's Status under FLSA*

Defendant argues that Plaintiff's FLSA cause of action should be dismissed because Plaintiff is exempt from the provisions of this statute. The Court agrees. FLSA provides a statutory framework under which employees can seek compensation for overtime work. See 29 U.S.C. § 201, et seq. Specifically, FLSA requires that a public law enforcement agency pay an employee overtime for work in excess of the prescribed work-week . See 29 U.S.C. § 207(a)(1), (k); Kelly v. City of Mount Vernon, 162 F.3d 765, 766 (2d Cir. 1998). However, an employee is

exempt from this provision if he is employed "in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited . . . by regulations of the Secretary [of Labor]." 29 U.S.C.A. § 213(a)(1) (West 2005). The Secretary of Labor's regulations define an executive, administrative, or professional employee as someone who performs certain duties and is paid on a salary basis at a rate of not less than $455 per week. See 29 C.F.R. §§ 541.0, 541.600 (2006).[5] Plaintiff concedes that Castro's duties fall under one of the exemptions under FLSA for executive, administrative, or professional employees. (See Pl.'s Mem. in Opp. to Sum. Judgment at 12.)[6] Castro was also compensated at a rate at least equal to $455 per week or $23,660 per year.[7] During his employment, Plaintiff was making anywhere between $55,000 to $65,000 in annual salary per year. (Chin Decl., Ex. A at 25.)

Plaintiff argues, however, that Castro does not satisfy the salary basis test for

---

[5] The duties are different for each category of employment. See 29 C.F.R. §§ 541.100, 541.200, 541.300.

[6] The undisputed evidence indicates that Castro at least satisfies the duties for an administrative employee. Under this exemption, an employee's primary duties must include "the performance of office or non-manual work directly related to the management or general business operations of the employer [and] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2006). Plaintiff's duties satisfy this definition. Castro was in charge of overseeing the maintenance of the MTA Police Department vehicles, the development and implementation of new policies, and the regular review and oversight of the inventory and financial status pertaining to the vehicles. (Chin Decl., Ex. F.) He also represented the MTA Police Department in all technical fleet matters in various meetings, including meetings with outside departments such as the MTA Budget, the MTA Procurement, and the MTA Risk Management. (Id.) Plaintiff also supervised at least two police officers, and, in his deposition acknowledged that "as a practical matter. . . [he] basically [ran] the fleet service without much supervision.." (Chin Decl., Ex. A at 26, 29.)

[7] The Court multiplied $455 by 52 or the number of weeks in a year.

exempt employee status under FLSA. (Pl.'s Mem. in Opp. to Sum. Judgment at 12-13.) An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a) (2006).

Plaintiff seems to argue that his MTA compensation was subject to reductions for absences of less than one day. (Pl.'s Mem. in Opp. to Sum. Judgment at 12-13.) Plaintiff is correct that a salaried employee may become non-exempt under FLSA if the employer has a policy of docking the employee's salary for absences of less than a day. See Martin Malcom Pirnie, Inc., 949 F.2d 611, 615 (2d Cir. 1991); 29 C.F.R. § 541.602(b)(1).[8] However, Plaintiff has proffered no evidence to create a genuine issue of fact as to whether the MTA had a policy or practice of making such deductions.[9] Rather, the undisputed evidence of record shows that the MTA docked salaried employees' leave and/or compensatory time balances in connection with absences of less than a full day.

The deposition of Margaret Conner, who was employed by the MTA from August 1992 and was director of the MTA's human resources department from January 2001, which Plaintiff cites as evidence of the alleged salary-docking policy, does not support his argument.

---

[8] It is not necessary that the employee's pay in fact be docked for the employee to become non-exempt. It is sufficient that the employer has a policy or practice of docking pay which creates a "significant likelihood" that the employee's pay will be docked. Auer v. Robbins, 519 U.S. 452, 461 (1997).

[9] Plaintiff does not argue, nor would the record support a finding, that Castro's salary was in fact docked at any time. (See Chin Decl., Ex. A at 44-45.) The record also does not indicate that any other exempt employee's salary was docked for partial day absences.

Conner testified that, when exempt employees miss less than one work day, their leave is appropriately docked. (See Lira Decl., Ex. 14 at 19.) She further testified that, even if an employee carries a negative leave balance, the MTA, during her tenure, has never docked an exempt employee's pay. (See id. at 20.)

Plaintiff seems to confuse the practice of docking leave balances with the docking of employee salaries for partial day absences.[10] The distinction is an important one. Docking an employee's leave balance or other fringe benefits for partial day absences does not change his exemption status as long as his salary is never docked. See 29 C.F.R. § 541.602(a) (referring to "predetermined" amount of pay);[11] Graziano v. Society of N.Y. Hosp., 96 Civ. 2716 (HB), 1997 U.S. Dist. LEXIS 15926, at *1 (S.D.N.Y. Oct. 13, 1997) (finding that, "the policy of deducting vacation, holiday, and sick pay for partial day absences does not render employees non-exempt under the FLSA, even when such accrued time is subject to cash pay out"); Webster v. Public School Employees of Washington, Inc., 247 F.3d 910, 917 (9th Cir. 2001) (finding that, because

---

[10] Plaintiff also seems to argue that the MTA did not follow its own policy and practice in docking leave balances for absences for less than one day. (Pl.'s Mem. in Opp. to Sum. Judgment at 12.) Plaintiff cites to an April 16, 1990, Attendance and Leave Policy instruction, which says that "[t]ardiness should not be charged to leave balances." (See Lira Decl., Ex. 2 at 416.) It is not clear that the MTA violated this provision. One could reasonably distinguish between merely being late to work from being absent for a partial day. In any case, whether the MTA followed its own instructions in regard to the recording of latenesses is not relevant to the determination of whether Castro is an exempt employee under FLSA.

[11] An exempt employee may lose his exempt status if his salary is docked for full day absences relating to sickness or disability. See 29 C.F.R. § 541.602(b)(1). There is no allegation on the instant record that the MTA impermissibly docked Plaintiff's salary for any full day absences or, indeed, that the MTA ever docked Plaintiff's salary for absences at all.

the statute refers to salary only, reductions in fringe benefits including "paid leave time" for partial-day absences do not affect an employee's exempt status under FLSA); Cooke v. General Dynamics Corp., 993 F. Supp. 50, 55 (D. Conn. 1997) (finding that "where the only deductions for partial-day absences are to an employee's paid leave accounts and the employer has a policy that no deductions from salary shall be made for partial-day absences, the salaried status of an employee has not been violated"); Department of Labor, Wage and Hour Division, Opinion Letter, 2005 DOLWH LEXIS 1, at *3-4 (January 7, 2005) (finding that docking an exempt employee's leave balance or other benefits for partial day absences does not change exemption status as long as employee receives full salary).[12] The Court therefore finds that Plaintiff is exempt from the FLSA's overtime payment requirements. Accordingly, Defendant MTA is entitled as a matter of law to summary judgment dismissing Plaintiff's FLSA cause of action.

*Breach of Contract*

The only remaining cause of action is Plaintiff's third cause of action, which alleges common law breach of contract. (Complaint ¶¶ 54-57.) Plaintiff alleges that the MTA is obligated to make overtime payments as a result of a written waiver issued by Defendant after September 11, 2001. (Id.) As the only federal cause of action has been dismissed, the Court declines to exercise supplemental jurisdiction over the non-federal common law cause of action. See 28 U.S.C.A. § 1367(c)(3); Town of West Hartford v. Operation Rescue, 915 F.2d 92, 104 (2d Cir. 1990) ("[I]t is well settled that if the federal claims are dismissed before trial, even

---

[12]  An employee also does not lose his exempt status if he receives additional pay for overtime work. See 29 C.F.R. § 541.604.

though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (internal quotations and citations omitted).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiff's Fair Labor Standards Act claim is granted. The Court declines to exercise supplemental jurisdiction of Plaintiff's breach of contract claim, which is therefore dismissed without prejudice. Plaintiff's 42 U.S.C. § 1983 and unjust enrichment claims are withdrawn. Plaintiff's cross-motion for summary judgment is denied in its entirety.

The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
May 23, 2006

LAURA TAYLOR SWAIN
United States District Judge

Copies faxed 5/23/06 counsel
Chambers of Judge Swain